UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAI NGUYEN,<br><br>               Plaintiff,<br><br>   v.<br><br>CITY OF VANCOUVER, VANCOUVER POLICE DEPARTMENT, and JOHN DOE, Vancouver Police Officer,<br><br>               Defendants. | CASE NO. 3:22-cv-05077-JHC<br><br>ORDER RE: MOTION FOR SUMMARY JUDGMENT |

# I
## INTRODUCTION

Before the Court is Defendant City of Vancouver's motion for summary judgment. Dkt. # 38.  Plaintiff Hai Nguyen brings a claim against the City and Vancouver Police Officer "John Doe" for allegedly violating his Fourth Amendment rights.  Dkt. # 35 at 6–7.  The City of Vancouver moves for summary judgment on the grounds that: (1) any individual claim against "John Doe" should be dismissed; (2) Plaintiff's Fourth Amendment rights were not violated; and (3) even if such a violation occurred, Plaintiff cannot meet the essential elements to sustain a *Monell* claim against the City.  Dkt. # 38 at 12–27.  The Court has considered the parties' briefing, the balance of the case file, and the applicable law.  Being fully advised, the Court

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 1

GRANTS the motion in part, DISMISSES the claim against "John Doe" without prejudice and DISMISSES the *Monell* claim with prejudice. To the extent the motion seeks dismissal with prejudice of the claim against "John Doe," it is DENIED.

## II

### BACKGROUND

On January 22, 2019, Erkinson Bossy and D'Anthony Williams committed an armed robbery of a Kelso convenience store. Dkt. # 14 at 13. Williams shot and killed Kayla Chapman and then Bossy took possession of the firearm. *Id.* The next day, Plaintiff gave Bossy a ride in Plaintiff's car from a grocery store. Dkt. # 39 at 29. The firearm used was still in Bossy's possession, and he put it on the floor of Plaintiff's vehicle. *Id.* According to Plaintiff, Bossy told him that he had robbed and killed somebody the night before. *Id.* at 35.

The Vancouver Police Department (VPD) helped search for the Kelso robbery suspects. Dkt. # 40-1 at 5. Bossy had a preexisting warrant for his arrest and Vancouver officers determined there was probable cause to arrest him for his role in the murder of Kayla Chapman. *Id.* at 30–31. After detaining and questioning other individuals involved in the robbery, Vancouver law enforcement determined that Bossy would be at a Vancouver address in a vehicle driven by Plaintiff. *Id.* at 8–9. According to Plaintiff, officers located Bossy and Plaintiff—but when Plaintiff stopped the vehicle, Bossy "jumped right at [him]," took control of the vehicle, and fled. Dkt. # 39 at 59–60. Plaintiff said that he crawled into the backseat and told Bossy to pull over. *Id.* at 63.

The officers then began a high-speed pursuit. Dkt. # 40-1 at 34. Officer Joe Graaff reports that the vehicle chase reached "into the 90 and 100 [miles per hour] ranges" in "moderate" traffic on the highway. *Id.* Bossy drove "in and out of traffic very fast" and was

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 2

"[c]utting people off." *Id.* at 36. Plaintiff said that Bossy's driving was "endangering other people including [Bossy] and himself." Dkt. # 39 at 115.

Officer James Porter was training a new officer, Officer Cody Esau, when he heard another officer say over the radio: "Code 33 . . . [u]nits at the mall. . . . Murder – PC Murder 1. Code 3, cover for officers on scene." Dkt. # 41-1 at 12–13. Porter said the following about the incident: He believed that the fleeing suspect had just committed murder based on the radio communication. *Id.* at 13. After he joined the pursuit, Bossy almost hit another vehicle and a jersey barrier. *Id.* at 24–25. Bossy slowed down and appeared to look back to target him. *Id.* at 28. He confirmed with other officers over the radio that there was probable cause for murder and that Bossy was armed and dangerous. *Id.* at 29. A pursuit intervention technique (PIT) maneuver[1] was not an option for the "Day 2 driver," Esau. *Id.* at 37. Porter said over the radio that he was going to "take a shot" and heard someone over the radio say, "go ahead." *Id.* at 36. Bossy turned and appeared to reach back to fire at he and Esau. *Id.* at 45. Porter then fired his rifle at Bossy's vehicle. *Id.* at 40–41. He believed Bossy returned fire because he saw "puffs of air" that he recognized as gunfire from his previous military combat experience. *Id.* at 46, 56–57. Porter communicated over the radio that he and Bossy were exchanging gunfire. *Id.* at 47. After Porter mistakenly believed that he had been shot, Porter and Esau pulled over and had no further involvement. *Id.* at 48–49.

After hearing Porter report over the radio that Bossy was returning gunfire, Graaff determined it was appropriate to respond with a PIT maneuver to abate the "great danger to the public." Dkt. # 40-1 at 38–40. Officer Ryan Starbuck performed the PIT maneuver when directed to do so by Graaff. *Id.* at 42–43. Bossy's vehicle collided with the inside and outside

---

[1] A PIT maneuver is a tactic "which causes the fleeing vehicle to spin to a stop." *Scott v. Harris*, 550 U.S. 372, 375 (2007).

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 3

jersey barriers before coming to a stop. *Id.* at 50–51.  The PIT maneuver ended the pursuit. *Id.* at 52–53.  Plaintiff said he laid down in the vehicle and closed his eyes when he heard gunshots. Dkt. # 39 at 84.  Law enforcement located a firearm within the truck in a backpack belonging to Bossy, but Plaintiff says he did not know if the gun had been fired. *Id.* at 114.  Plaintiff was transported to the hospital "after he was taken into custody and complained of pain to his left rear hip/buttocks area." Dkt. # 49-3 at 11.  "[M]edical staff were unable to determine if [he had] a gunshot [wound] or not as there was nothing in the wound such as a bullet slug or otherwise, but they described it as consistent with a burn like mark." *Id.*  The hospital cleared Plaintiff and said he was medically released. *Id.*

Plaintiff alleges that a currently unnamed officer "John Doe" and the City unreasonably seized the vehicle in violation of his Fourth Amendment rights. Dkt. # 35 at 6–7.  Defendant City moves for summary judgment. Dkt. # 38.

### III
#### Discussion

Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences should be drawn in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Plaintiff asserts a cause of action under 42 U.S.C. § 1983 based on "Defendants' gunfire and high-speed pursuit," which Plaintiff says, "constituted an unreasonable seizure depriving Plaintiff of his Fourth Amendment rights." Dkt. # 35 at 6.  The City moves for summary

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 4

judgment on three grounds: (1) any claim against "John Doe" should be dismissed; (2) Plaintiff's Fourth Amendment rights were not violated; and (3) even if such a violation occurred, Plaintiff fails to establish that the City had a policy or custom that led to the alleged injury—a requirement for municipal liability. Dkt. # 38 at 12–27.

A.  Individual Claim Against "John Doe"

The City says any claim against Defendant John Doe should be dismissed because no individual has been named or served. *Id.* at 12. Plaintiff does not respond to this argument. *See* Dkt. # 48.

Federal Rule of Civil Procedure 4 sets forth the requirements for summons. *See* Fed. R. Civ. P. 4. Rule 4(m) specifies the required timeline:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action *without prejudice* . . . or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.* (emphasis added).

On May 20, 2022, this Court ordered Plaintiff to show cause within ten days why Defendant John Doe should not be dismissed for failure to comply with Rule 4(m). Dkt. # 22. On June 1, 2022, Plaintiff responded that "[he] has good cause to extend time for service because the identity of John Doe requires discovery." Dkt. # 25 at 3. On October 27, 2022, counsel for Defendant City filed a declaration that at no time has Plaintiff or his attorney served any request for discovery. Dkt. # 47 at 2. The declaration includes a copy of an email sent by counsel's office to Plaintiff's counsel, which includes a link to access "the entire [VPD] internal affairs investigation file." *Id.* at 2, 33.

Plaintiff does not show he has made any request for discovery or otherwise attempted to serve an individual in the nine months since his request to extend time for service. Thus, the Court dismisses the claim against Defendant John Doe without prejudice under Rule 4(m).

B.      *Monell* Claim Against the City of Vancouver

Even assuming a constitutional violation occurred, as claimed by Plaintiff, he fails to establish a *Monell* claim against the City. Plaintiff says that the "City of Vancouver was deliberately indifferent to officer use-of-force incidents by failing to adequately investigate and update VPD policies." Dkts. ## 35 at 7; 48 at 7–8. The City responds that Plaintiff fails to demonstrate "any deliberately indifferent policy that could have caused [the] alleged constitutional violation." Dkt. # 38 at 21.

For Plaintiff to establish municipal liability here, he must show that a "policy or custom" led to his injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Further, the policy or custom must reflect "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [their] action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404.

Plaintiff fails to provide evidence that the City had a policy or custom that was deliberately indifferent to, and directly caused the deprivation of his, constitutional rights. Plaintiff points to VPD policy section 300, which provides guidelines for the use of force:

> Officers shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose.

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 6

> . . . .
> Use of deadly force is justified in the following circumstances:
> (a) An officer may use deadly force to protect [themselves] or others from what [they] reasonably [believe] would be an imminent threat of death or serious bodily injury.
> (b) An officer may use deadly force to stop a fleeing subject when the officer has probable cause to believe that the person has committed, or intends to commit, a felony involving the infliction or threatened infliction of serious bodily injury or death, and the officer reasonably believes that there is an imminent risk of serious bodily injury or death to any other person if the subject is not immediately apprehended. Under such circumstances, a verbal warning should precede the use of deadly force, where feasible.
> . . . .
> An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others.

Dkt. # 45 at 4–8. VPD policy section 300 tracks the Fourth Amendment standard the Supreme Court articulated in *Graham v. Connor*:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. . . . Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

490 U.S. 386, 396 (1989) (internal citations omitted). As in *Graham*, VPD policy requires officers to only use force that is reasonably necessary considering the circumstances.

Plaintiff says that the VPD policy is deliberately indifferent to his constitutional rights in two ways. First, he says VPD policy merely "strongly discourage[s]" officers shooting from a moving vehicle, but "case law indicates that shooting at moving vehicles is a practice that should be reserved [only] for situations where deadly force is directed at the officer involved." Dkt. # 48 at 9 (citing *Tubar v. Clift*, 453 F. Supp. 2d 1252 (W.D. Wash. 2006)). But the *Tubar*

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 7

court expressly held that if "the suspect poses a threat of serious physical harm, either to the officer *or to others*, it is not constitutionally unreasonable to prevent escape by using deadly force." 453 F. Supp. 2d at 1258 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)) (emphasis added). VPD policy follows this standard—deadly force on a fleeing subject is allowed only when "the officer reasonably believes that there is an imminent risk of serious bodily injury or death to any other person if the subject is not immediately apprehended." Dkt. # 45 at 7.

Second, Plaintiff says the City failed to update VPD policy to reflect recommendations from the Police Executive Research Forum (PERF). Dkt. # 48 at 8. PERF is a police research and policy nonprofit organization. POLICE EXECUTIVE RESEARCH FORUM, https://www.policeforum.org/. In June 2019, the City commissioned PERF to review the VPD. POLICE EXECUTIVE RESEARCH FORUM, REVIEW OF THE VANCOUVER, WA POLICE DEPARTMENT: FINAL REPORT 4 (2020) (PERF Report). VPD's alleged noncompliance with PERF use of force guidelines does not suggest a deliberate indifference to Plaintiff's Fourth Amendment rights. The PERF Report provides "tactical considerations and recommendations" to simplify the section 300 policies. *Id.* at 31 (suggesting section 300.4.1 "should be simplified"), 87 (describing "tactical considerations and recommendations" for use of force incidents). The PERF Report notes:

> This report identifies areas where VPD's use-of-force policies and practices are already aligned with progressive policing practices, and presents recommendations for how VPD can strengthen its policies and practices. Throughout the course of this review, PERF's project team regularly discussed these recommendations with VPD leaders. VPD began making changes to its practices based on these discussions, and at the time of this report the department had already implemented some of PERF's recommendations.
> . . . .
> By commissioning this review, VPD has demonstrated its commitment to improving its policies and practices related to use of force, and responding to the needs of the community. This report is intended to serve as a guide for implementing these efforts.

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 8

*Id.* at 89–90.  Nowhere does the report suggest that the VPD policy is deliberately indifferent to constitutional rights.  Nor does Plaintiff satisfactorily explain how the report suggests any such deliberate indifference; or how any such deficiency in the policy led to the alleged constitutional violation.

C.      Continuance Request

Plaintiff opposes summary judgment on the ground that "there remains discovery which has not been completed which would necessitate a stay of this Court's decision [on the motion]." Dkt. # 48 at 2.  Under Federal Rule of Civil Procedure 56(d), the Court may grant a continuance on a motion for summary judgment if "(1) [the requesting party] has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  Plaintiff has not met the requirements for a continuance.  Plaintiff does not set forth in affidavit (or declaration) form any facts he hopes to elicit from further discovery.  He acknowledges that "[the] City of Vancouver turned over nearly [three] thousand pages of reports, interviews, and transcripts as [well] as hours of emergency services call recordings," and fails to prove the existence of additional sought-after facts essential to oppose summary judgment. Dkt. # 48 at 6.

### III
#### Conclusion

Based on the above, the Court GRANTS the motion in part, DISMISSES the claim against "John Doe" without prejudice and DISMISSES the *Monell* claim with prejudice.  To the extent the motion seeks dismissal with prejudice of the claim against "John Doe," it is DENIED.

/

/

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 9

Dated this 7th day of April, 2023.

*John H. Chun*
John H. Chun
United States District Judge